**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR 04-4042-MWB |
| vs. | **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTIONS FOR PERMISSION TO CONDUCT POST-TRIAL INTERVIEW OF JURORS, FOR JUDGMENT OF ACQUITTAL, AND FOR NEW TRIAL** |
| RAHMAAN MANZAR EL HERMAN, | |
| Defendant. | |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.  MOTION FOR PERMISSION TO CONTACT JURORS* . . . . . . . . . . . . . . 4
    *A.  Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *B.  Legal Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*III.  MOTION FOR NEW TRIAL* . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    *A.  Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    *B.  Legal Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        *1.  Waiver* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        *2.  Remaining claim for new trial* . . . . . . . . . . . . . . . . . . . . . 19
        *3.  Conditional grant of new trial* . . . . . . . . . . . . . . . . . . . . 21

*IV.  MOTION FOR JUDGMENT OF ACQUITTAL* . . . . . . . . . . . . . . . . . . . 22
    *A.  Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    *B.  Legal Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*V.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# I. INTRODUCTION AND BACKGROUND

On July 31, 2007, the jury found defendant El Herman guilty of conspiring to manufacture and distribute 50 grams or more of crack cocaine, and guilty of conspiring to distribute 500 grams or more of powder cocaine. During the first day of trial, the prosecution called Tony Smith to the stand and the following exchange took place on re-redirect examination:

> Q: Do you know when [El Herman] left town?
> A: No, I can't remember that. I know he got some trouble with kidnaping and a gun.
> Q: I'm not asking you when. I'm asking you if you know—
> A: I can't remember.
> Q: And do you not know?
>
> MR. RHINEHART: Your honor, I apologize. I apologize, but based upon the outburst of this witness, I at the very least move to strike the testimony and ask you to admonish the jury or at the very most ask for a mistrial.
>
> THE COURT: Members of the jury, you just heard kind of a unresponsive, spontaneous, voluntary, in all likelihood wrong and misinformed statement by the defendant. It was—I'm sorry, by the witness. It was improper, in my view is not accurate at all, has no basis in fact, and you're instructed to disregard it. It has absolutely no basis in fact, has absolutely nothing to do with this trial, has absolutely nothing to do with this defendant. I don't know where that came from or what it's about, but it's not accurate. And so I'm instructing you to totally disregard the statement, and you have to just completely set it aside.
>
> And I'll take your other motion under advisement.

Tr. p. 63-64. The parties later discussed El Herman's motion for mistrial after the jury had recessed for the day. The court and parties all expressed concern over the statement

made by the witness, but ultimately determined it was best to adjourn for the day to research the issue and discuss the motion again the following morning.

The next morning the court discussed with the parties the case law concerning motions for mistrial and heard the parties' arguments over whether a mistrial should be granted. The court acknowledged it was prepared to grant a mistrial, but El Herman wished to defer his motion until more evidence had been presented. The court agreed to allow El Herman to defer his motion until later.

At the end of the prosecution's case in chief and after the parties had examined El Herman's first witness, El Herman made a Rule 29 motion for judgment of acquittal.[1] The court deferred ruling on the motion. Also at this time, the court and parties discussed El Herman's deferred motion for mistrial. The court informed El Herman that it was "either now or never" for him to formally move for a mistrial, and that the court would grant such a motion if it was made. El Herman opted not to, informing the court that he "wanted to proceed with this case with this jury with you." Tr. p. 227-28. The court acknowledged, however, that El Herman's withdrawal of his motion for mistrial likely did not preclude him from raising the potential prejudice created by the witness's outburst in a subsequent post-trial motion.

El Herman then decided he would rest and the prosecution indicated it would not present any rebuttal evidence. El Herman then made another Rule 29 motion, and the court deferred its ruling on the motion again. The jury returned a guilty verdict, and the court allowed El Herman twenty-one days to file post-trial motions and informed the parties that it would likely want to hear oral arguments on the motions.

---

[1] The court allowed, or requested, El Herman to make his Rule 29 motion at this time, rather than at the close of the prosecution's case in chief, so the jury could continue listening to the evidence until the next need for a recess. Tr. p. 220-21.

El Herman submitted three post-trial motions: a motion for judgment of acquittal, a motion for new trial, and a motion for permission to conduct post-trial interviews of jurors.[2] The court issued an order on November 2, 2007, requesting oral argument on post-trial motions. The court specifically requested the parties to argue the issue of "whether the defendant's failure to move for a mistrial on the basis of Mr. Smith's testimonial outburst in court results in the waiver *of that argument* to support a motion for new trial." Dkt. # 85. Arguments were heard November 14, 2007. El Herman was represented by Scott Rhinehart of Rhinehart Law, P.C., in Sioux City, Iowa. The prosecution was represented by Shawn Wehde, Assistant United States Attorney, of the United States Attorney's office in Sioux City, Iowa. At the conclusion of arguments, the court requested additional written argument and allowed the parties to brief the matter again. El Herman filed his supplemental brief on January 14, 2008. Dkt. # 91. After allowing an extension, the prosecution filed its supplemental resistance brief on February 4, 2008. Dkt. # 94. El Herman filed his supplemental reply brief on February 20, 2008. Dkt. # 95. The matter is now fully submitted and ready for disposition.

## II. *MOTION FOR PERMISSION TO CONTACT JURORS*

### A. *Legal Standards*

Local Rule 47 provides the basic requirement in this district that communication with jurors is prohibited "[e]xcept by leave of court." N.D. IA. L.R. 47. Specifically, the

---

[2] El Herman filed a fourth post-trial motion for an extension of time to complete his presentence investigation report interview. The court granted El Herman's motion for an extension on August 23, 2007, stating he "shall not be required to take part in a presentence investigation report interview until such time as the court has ruled on defendant El Herman's pending post-trial motions." Dkt. # 69.

rule precludes a party or lawyer, or someone acting on their behalf, from "contact[ing], interview[ing], examin[ing], or question[ing] any trial juror or potential trial juror before, during, or after a trial concerning the juror's actual or potential jury service" unless he or she first receives permission from the court. N.D. IA. L.R. 47; *see* N.D. IA. L. CR. R. 24.1 ("Local Rule 47, relating to contact with jurors, applies in criminal cases.").

In addition to this basic requirement, Rule 606(b) of the Federal Rules of Evidence often comes into play because it generally prohibits the "admission of jury testimony to impeach a verdict." *Tanner v. United States*, 483 U.S. 107, 121 (1987). Rule 606(b) provides:

> **(b) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

FED. R. EVID. 606(b). Rule 606(b) largely embodies the common law rules that preceded it, and relies on the same "[s]ubstantial policy considerations" to support it. *Tanner*, 483 U.S. at 119, 121. As such, it seeks to preserve "frankness and freedom of discussion and conference" among jurors, and to prohibit jurors from "be[ing] harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish

misconduct sufficient to set aside a verdict." *McDonald v. Pless*, 238 U.S.264, 267-68 (1915). Stated differently, Rule 606(b) and its common law history help secure "the finality of the process." *Tanner*, 483 U.S. at 120.

Importantly, Rule 606(b) only "deals with juror testimony in an inquiry into the validity of a verdict or indictment." FED. R. EVID. 606(b) advisory committee note. Thus, when a party simply wishes to contact or interview a juror for reasons other than inquiring into a verdict or indictment, Local Rule 47 controls. Moreover, even though a party's attempt to receive a juror's "testimony" under Rule 606(b) may not be the same as a party's attempt to "contact, interview, examine, or question" a juror under Local Rule 47, the court does not feel such situations should necessarily be treated differently. The rules conflate in certain situations. If the party intends on inquiring into the validity of the verdict or indictment, the party's ultimate goal is obvious: to form a basis for upsetting the verdict or indictment through the admission of evidence, or jury testimony. Thus, when a party is seeking to inquire into the validity of a verdict or indictment, no real distinction exists between a party's attempt to formally admit a juror's testimony and a party's attempt to contact or interview a juror. The contact, interview, examination, or questioning is simply a precursor to the attempted admission of testimony in an evidentiary hearing on a post-trial motion. As a result, the contact under Local Rule 47 and the testimony under Rule 606(b) can be the practical equivalent of each other and the "[s]ubstantial policy concerns" supporting Rule 606(b)'s prohibition against "testimony" also support a prohibition against "contacting" or "interviewing" jurors. *See Tanner*, 483 U.S. at 119-20 (discussing the policy concerns); *United States v. Moten*, 582 F.2d 654, 665 (2d Cir. 1978) ("The rules relating to post-trial interviewing of jurors is less well-developed than the rules relating to the admission of juror testimony in order to impeach a verdict. Nevertheless, many of the same interests are implicated in both situations . . .

. Thus, supervision is desirable not only to protect jurors from harassment but also to insure that the inquiry does not range beyond subjects on which a juror would be permitted to testify under Rule 606(b).").

Therefore, whenever a party attempts to contact, interview, or receive the testimony of jurors, the initial question is whether the party is seeking "an inquiry into the validity of a verdict or indictment." FED. R. EVID. 606(b). If so, the party must receive permission from the court to do so, and such permission is contingent on the contact falling within the exceptions explained in Rule 606(b). If the party is not seeking to communicate with the jury about the validity of the verdict or indictment, then, in this district, the party simply has to receive permission from the court to do so.

Whether the court will grant permission under Local Rule 47 is completely left to the court's discretion. Local Rule 47 does not provide any standard for the court to follow, and neither do any federal rules apart from Rule 606(b). *See* N.D. IA. L.R. 47 (requiring "leave of court"). Ethical rules do, however, offer some guidance by providing that a lawyer shall not "communicate with a juror or prospective juror after discharge of the jury if: (1) the communication is prohibited by law or court order; (2) the juror has made known to the lawyer a desire not to communicate; or (3) the communication involves misrepresentation, coercion, duress or harassment[.]" MODEL RULES OF PROF'L CONDUCT 3.5 (2002).

Whenever a party wishes to communicate with jurors for the purposes of possibly impeaching the verdict, however, the parties are constrained not only by the discretion of the court under Local Rule 47 but also by the parameters of Rule 606(b). While the court has said before that the "breadth of the exception[s] [in Rule 606(b)] [are] imprecise," *Lopez v. Aramark Uniform & Career Apparel, Inc.*, 417 F. Supp. 2d 1062, 1072 (N.D. Iowa 2006); *see United States v. Rutherford*, 371 F.3d 634, 644 (9th Cir. 2004) (noting

"the lines that courts have drawn between the forms of juror testimony that are admissible and even inadmissible to show juror bias is imprecise" and "some may consider it artificial"), the advisory committee notes help explain the scope of the exceptions. The notes state the rule "does not permit juror testimony about any matter or statement occurring during the course of the jury's deliberations," but that "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention and on the question whether any outside influence was improperly brought to bear on any juror." FED. R. EVID. 606(b) advisory committee note (1974 enactment). Finally, the notes add "that juror testimony may be used to prove that the verdict reported was the result of a mistake in entering the verdict on the verdict form." *Id.* (2006 amendments).

Federal case law has also helped to define the scope of the exceptions in Rule 606(b). The Eighth Circuit Court of Appeals has stated Rule "606(b) generally precludes inquiry into intrajury communications," but that "testimony regarding 'extraneous prejudicial information and outside influences brought to bear on the jury,'" as mentioned in the first two exceptions, *see* Fed. R. Evid. 606(b)(1)-(2), may be permitted, *United States v. Johnson*, 495 F.3d 951, 981 (8th Cir. 2007) (quoting *United States v. Caldwell*, 83 F.3d 954, 956 (8th Cir. 1996)). "Extrinsic or extraneous influences include 'publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons." *United States v. Rodriguez*, 116 F.3d 1225, 1227 (8th Cir. 1997). Because the third statutory exception is relatively new, there is little case law defining its scope. *See* Fed. R. Evid. 606(b)(3); *United States v. Casiano*, No. 3:05CR195(MRK), 2007 WL 1692125, at *3 n.2 (D. Conn. June 7, 2007) (discussing the third exception). It largely codifies a judicial exception created many years ago, however, and as a result there are decisions that

give insight into the breadth of the exception. *See* Fed. R. Evid. 606(b) advisory committee note (noting the 2006 amendment establishing the third exception "responds to a divergence between the text of the Rule and the case law that has established an exception for proof of clerical errors"). In one of these cases decided prior to the rule's amendment it was held "that juror testimony regarding an alleged clerical error, such as announcing a verdict different than that agreed upon, does not challenge the validity of the verdict or the deliberation of mental processes, and therefore is not subject to Rule 606(b)." *Plummer v. Springfield Term. Ry. Co.*, 5 F.3d 1, 3 (1st Cir. 1993).

The case law is clear that no matter what the exception, none is to be exploited at the expense of a "fishing expedition." *See, e.g.*, *United States v. Davila*, 704 F.2d 749, 754 (5th Cir. 1983) ("The prevention of fishing expeditions in search of information with which to impeach jury verdicts is a principal purpose of the rule."); *United States v. Smith*, No. 05 Cr. 922(DLC), 2007 WL 1741850 (S.D.N.Y. June 15, 2007) ("The Second Circuit 'has consistently refused to allow a defendant to investigate jurors merely to conduct a fishing expedition.'" (quoting *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989))). Thus, some showing of prejudice is typically required before contact with the jurors or an evidentiary hearing may be granted. *See Johnson*, 495 F.3d at 981 ("Before a hearing may be granted, however, the moving party should 'show[] that outside contact with the jury presents a reasonable possibility of prejudice to the verdict.'" (quoting *United States v. Tucker*, 137 F.3d 1016, 1030 (8th Cir. 1998))); *United States v. Wintermute*, 443 F.3d 993, (8th Cir. 2006) (requiring a "'colorable claim of outside influence'" to necessitate an evidentiary hearing, and noting "[s]peculation and unsubstantiated allegations do not present a colorable claim of outside influence of a juror" (quoting *United States v. Moses*, 15 F.3d 774, 778 (8th Cir. 1994))). Finally, a district court has considerable discretion when ruling on motions to contact jurors or evidentiary hearings

on alleged juror misconduct, and its ruling "will be affirmed absent an abuse of discretion." *Johnson*, 495 F.3d at 981; *see United States v. Booker*, 334 F.3d 406, 416 (5th Cir. 2003) ("A trial court's decision to deny an attorney's request for post-trial interviews of the jury is reviewed for abuse of discretion."); *McElroy v. Firestone Tire & Rubber Co.*, 894 F.2d 1504, 1511 (11th Cir. 1990) ("We review the district court's disposition of this motion [to interview jurors] only for abuse of discretion.").

## B. Legal Analysis

El Herman plainly acknowledges that his motion to contact jurors is "to determine whether the prejudicial statements made by 'Fast Talkin' Tony Smith' impacted the jury's decision." Dkt. # 78. El Herman's request clearly falls within the confines of Rule 606(b) because it is "an inquiry into the validity of [the] verdict." FED. R. EVID. 606(b). Therefore, El Herman must receive permission from this court to contact the jurors under Local Rule 47, and such permission will only be granted if his request falls within an exception noted in Rule 606(b). *Cf. Lopez*, 417 F. Supp. 2d at 1073 (finding "Rule 606(b) would preclude introduction of the very evidence the defendant relies upon" in her motion for an *evidentiary hearing* on alleged juror misconduct).

El Herman's request does not meet any exception in Rule 606(b). It certainly is not a request to inquire into "whether there was a mistake in entering the verdict onto the verdict form." Fed. R. Evid. 606(b)(3). Moreover, the witness's outburst in court is not "extraneous" information or an "outside influence." *Id*. 606(b)(1)-(2). The Eighth Circuit Court of Appeals has stated that "'matters considered by the jury but not admitted into evidence'" are extraneous information or outside influences. *Rodriguez*, 116 F.3d at 1227 (quoting *United States v. Bassler*, 651 F.2d 600, 602 (8th Cir. 1981)). In this case, of course, the witness's outburst was not admitted into evidence. *See United States v.*

*Reithemeyer*, 206 Fed. Appx. 644, 646 (8th Cir. 2006) (finding evidence to be intrinsic because it was admitted into evidence). But the court does not believe that makes the statement extraneous information or an outside influence.

In *Rodriguez*, the Eighth Circuit Court of Appeals held that a defendant's decision not to testify was not an outside influence because it was

> not a fact the jurors learned through outside contact, communication, or publicity. It did not enter the jury room through an external, prohibited route. It was part of the trial, and was part of the information each juror collected. It should not have been discussed by the jury, and indeed was the subject of a jury instruction to that effect. But it was not "extraneous information," and therefore does not fall within the exception outlined in Rule 606(b).

116 F.3d at 1227; *see United States v. Kelley*, 461 F.3d 817 (6th Cir. 2006) (agreeing with the reasoning in *Rodriguez* "because the juror did not learn of the [defendants'] failure to testify through improper channels"). In another case, the Eighth Circuit Court of Appeals held the jury's knowledge of a "[co-defendant's] plea and payment of a fine" was "extrinsic information," even though the district court issued a limiting instruction advising the jury not to consider it. *United States v. Brown*, 108 F.3d 863, 867 (8th Cir. 1997). Importantly, the jury gained knowledge of this information from outside the courtroom. *See id.* at 865 (stating the information likely came from "news accounts" and from the jurors possibly witnessing "co-defendants celebrating in the hallway").

These cases are consistent with the general proposition that extraneous information or an outside influence is predicated on an occurrence outside of what is presented to the jury in the courtroom. *See United States v.* Stewart, 317 F. Supp. 2d 426, 431 (S.D.N.Y. 2004) ("Extraneous prejudicial information is commonly understood to mean information the jury receives outside the courtroom."). However, in this case, the witness's outburst

came during the normal course of the trial. Thus, it does not meet an exception under subparagraph (b)(1) or (b)(2) under Rule 606. Moreover, it was immediately handled by a limiting instruction. *See United States v. Logan*, 250 F.3d 350, 379-81 (6th Cir. 2001) (emphasizing the difference between external and internal influences, and noting, *inter alia*, a jury's "misunderstanding of court instructions" is an internal influence). While the court is skeptical that limiting instructions deserve the presumption they receive, *see Loehr v. Walton*, 242 F.3d 834, (8th Cir. 2001) ("We presume that the jury followed these directions."); *Rossetti v. Curran*, 891 F. Supp. 36, 50 (D. Mass. 1995) (noting circumstances where the court is "appropriately skeptical of limiting instructions"), the court's admonition lessens the chance that such an extraneous or outside influence, even if labeled as such, "presents a reasonable possibility of prejudice to the verdict." *United States v. Tucker*, 137 F.3d 1016, 1030 (8th Cir. 1998). As a result, it is less "colorable [of a] claim of outside influence" and would likely not warrant inquiry even if it was extrinsic information. *United States v. Wintermute*, 443 F.3d 993, 1003 (8th Cir. 2006).

Under these circumstances, the court cannot say El Herman's requested inquiry into Smith's testimonial outburst meets an exception under Rule 606(b). Therefore, even if El Herman does not wish to attempt to obtain Rule 606(b) "testimony" from the jurors, the court refuses to give permission to "contact, interview, examine, or question" the jury under Local Rule 47 because such communications would ultimately be barred under Rule 606(b).

### III.  MOTION FOR NEW TRIAL

#### A.  Legal Standards

Rule 33 of the Federal Rules of Criminal Procedure governs the standards applicable to motions for new trial.  Rule 33 states:

> Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.  If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

FED. R. CRIM. P. 33(a).  The rule generally requires a defendant to file a motion for new trial "within 7 days after the verdict or finding of guilty," but "within 3 years" if the motion is "grounded on newly discovered evidence."  *Id.* 33(b).  Thus, the defendant must timely request a new trial, and the court can only grant such a request "if the interest of justice so requires."  *Id.* 33(a).

According to the Eighth Circuit Court of Appeals, the interests of justice require a motion for new trial to be granted when "a serious miscarriage of justice may have occurred."  *United States v. Rice*, 449 F.3d 887, 893 (8th Cir. 2006) (quotations omitted).  While "[m]otions for new trial are generally disfavored," *id.*, and "the district court's authority to grant a new trial should be exercised sparingly and with caution," *United States v. Johnson*, 474 F.3d 1044, 1050-51 (8th Cir. 2007), "[t]he decision to grant a Rule 33 motion is within the sound discretion of the District Court," *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004) (quotations omitted).  Such discretion and authority to grant a new trial is greater than the district court's ability to grant a motion for judgment of acquittal.  *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).

When the motion for new trial is based on newly discovered evidence, the district court's discretion to grant the motion hinges on its evaluation of several elements.  *See United States v. Baker*, 479 F.3d 574, 577 (8th Cir. 2007) (explaining what a defendant

must show "to receive a new trial based on newly discovered evidence"). To receive a new trial based on newly discovered evidence, a defendant must prove "(1) the evidence is in fact newly discovered since trial; (2) diligence on his part; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) it is probable that the new evidence would produce an acquittal at the new trial." *United States v. Myers*, 503 F.3d 676, 682-83 (8th Cir. 2007). When the motion for new trial is based on the typical ground that "the verdict is against the weight of the evidence," *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992), the district court's discretion allows it to "rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict," *Ryan v. McDonough Power Equip.*, 734 F.2d 385, 387 (8th Cir. 1984) (quotation omitted); *see Dodd*, 391 F.3d at 934 (same). At all times, however, the district court's discretion to grant a new trial is limited by the required presence of a miscarriage of justice. *See Campos*, 306 F.3d at 579 ("Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand."); *United States v. Smith*, 487 F.3d 618, 621 (8th Cir. 2007) ("The jury's verdict must be allowed to stand unless the evidence weighs heavily enough against the verdict [such] that a miscarriage of justice may have occurred." (quotations omitted)).

On appeal, the district court's decision regarding a motion for new trial will be reviewed for an abuse of discretion. *Dodd*, 391 F.3d at 934. It is an abuse of discretion "if the District Court fails to consider a factor that should have been given significant weight, considers and gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering and weighing only proper factors." *Id.*

## B. Legal Analysis

### 1. Waiver

The court requested the parties to brief the issue of whether El Herman's failure to move for a mistrial on the basis of Smith's testimonial outburst precluded the defendant from raising the same argument in a motion for new trial. In addition, the court requested the parties to orally argue this same issue after their briefs were submitted, and to submit additional briefing after oral arguments. In their arguments and briefings, both parties argue the Eighth Circuit Court of Appeals's decision in *Brown* supports their position. *See* 108 F.3d at 863.

At two separate times during the course of the trial in *Brown*, the district court learned that jurors were considering extraneous information. *Id*. at 865. Neither party moved for a mistrial; instead, they relied on two separate instances of limiting instructions to inform the jurors to only consider the evidence presented at trial. *Id*. After the jury found the defendant guilty, however, the defendant successfully received permission from the court to inquire into the validity of the jury's verdict. *Id*. at 866. Upon doing so, it was discovered that the jury had continued to consider extraneous information. *Id*. The defendant then moved for a new trial based on this new information. *Id*. The court granted the motion. *Id*.

On appeal in *Brown*, the prosecution argued the defendant knew about the jury's exposure to extrinsic information during trial, and by failing to move for a mistrial at the time, the defendant waived that argument post-verdict. *Id*. The Eighth Circuit Court of Appeals held that the defendant had not waived his claim for a new trial as a result of failing to move for a mistrial because the defendant had not intentionally relinquished or abandoned a known right. *Id*. at 867. During the trial, the defendant

> justifiably presumed that the jury would follow the court's
> instructions to disregard the extrinsic evidence. It wasn't until
> the court's post-verdict voir dire . . . that Brown became
> aware that, despite the court's instructions to the contrary, the
> jury had continued to consider the fact that [a co-defendant]
> pleaded guilty and agreed to pay a $161 million fine.
> Consequently, we cannot say that Brown waived his right to a
> new trial.

*Id.* (internal citation and footnote ommitted). In addition, the court held "that under Rule 606(b) the district court properly considered the testimony of the jurors to the extent that their testimony revealed that the extrinsic information continued to be considered by the jury." *Id.* Thus, because there was evidence that the jurors continued to consider prejudicial extrinsic information that was not known to the defendant when he could have moved for a mistrial, the defendant had not waived his right to move, post-verdict, for a new trial on that basis. *Id.*

El Herman argues Smith's testimonial outburst is exactly like the extraneous information in *Brown*. While sympathetic to El Herman's plight, the court disagrees. In *Brown*, the defendant learned, after the trial was over, that the jury continued to consider extrinsic information—a subject that can be properly inquired into post-verdict under Rule 606(b). Thus, there was a change in circumstance between when the defendant could have originally moved for a mistrial and when the defendant moved for a new trial. When the defendant in *Brown* chose not to move for a mistrial, he did so "justifiably presum[ing]" that the jury followed the court's limiting instructions. *Id.* The jury, however, did not follow the court's limiting instructions and considered the extrinsic information. Therefore, the defendant did not intentionally relinquish or abandon a *known* right or argument. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("[W]aiver is the 'intentional reqlinquishment or abandonment of a known right.'" (quoting *Johnson v.*

*Zerbst*, 304 U.S. 458, 464 (1938))). At the time the defendant could have moved for a mistrial, the defendant did not know that the jury was continuing to consider extrinsic information—or at least the defendant "justifiably presumed" that the jury was not considering such information. *Brown*, 108 F.3d at 867.

In this case, El Herman knew at the time he could have moved for a mistrial exactly what he knows now: Smith made a testimonial outburst, and the court admonished the jury not to consider it. Post-verdict, there is nothing new or different about the testimonial outburst. The only difference now is that the defendant is awaiting his sentence rather than awaiting the verdict. While the court is troubled that the court's limiting instruction was insufficient to eliminate the extraordinary prejudice created by Smith's testimonial outburst,[3] nothing establishes that the situation during the course of trial is any different than the situation now. Thus, the court finds this case is unlike *Brown*, and that El

---

[3] Smith's testimonial outburst served as a pink elephant, or a "white elephant in the corner." *Arlio v. Lively*, 474 F.3d 46, 50 (2d Cir. 2007) (explaining the district court's use of a limiting instruction to deal with a "white elephant" distraction). Because limiting instructions can never prevent a pink elephant from waltzing into the room, or make a jury color-blind, the pink elephant always remains a part of the jury's memory. *See State v. Harmon*, 956 P.2d 262, 278 (1998) (Durham, J., concurring) ("After summarizing more than two decades of research on the question, one commentator observes that the consistency of results makes it 'safe to say that the research demonstrates that it is far more likely that admonitions are ineffective than that they work as the courts intend.'" (quoting J. Alexander Tanford, *Thinking About Elephants: Admonitions, Empirical Research and Legal Policy*, 60 UMKC L. REV. 645, 653 (1992))); *Expert Witnesses Under Rules 703 and 803(4) of the Federal Rules of Evidence*, 72 IND. L.J. 939, 972 n.263 (1997) ("The quest of the limiting instruction has been characterized as trying to 'unring a bell' or trying to 'remove the cream from the coffee' or telling a boy to 'go to a corner and not think of elephants.'"). *Brown*, in fact, is a perfect example of the jury continuing to discuss the pink elephant and failing to follow the district court's limiting instructions. 108 F.3d at 867.

Herman intentionally relinquished and abandoned the right to argue Smith's testimonial outburst in a motion for new trial by not doing so in a motion for mistrial.

The difference between *Brown* and this case is also apparent from the application of Rule 606(b). The Eighth Circuit Court of Appeals noted in *Brown* that the district court "explicitly based its decision [to grant a new trial] only on evidence admissible under Rule 606(b)." *Id.* Thus, Rule 606(b) did not preclude the district court from considering the defendant's new evidence that formed the basis for a new trial. Furthermore, because that evidence was not known to the defendant at the time he could have moved for a mistrial, the defendant did not waive the argument post-verdict. In essence, the defendant's motion for a new trial presented a new argument as a result of a new situation, or change in circumstances. That is not the case here, where the same argument is being presented and the evidence the defendant would like to use to create a new argument or new situation cannot be inquired into under Rule 606(b). Therefore, the defendant's argument for a new trial, to the extent that it relies on Smith's testimonial outburst, is waived. *See id.* at 866 ("'[A] defendant cannot learn of juror misconduct during the trial, gamble on a favorable verdict by remaining silent, and then complain in a post-verdict motion that the verdict was prejudicially influenced by the misconduct.'" (quoting *United States v. Jones*, 597 F.2d 485, 488 n.3 (5th Cir. 1979))).

The court also does not believe its indications at trial that the defendant *may* be able to assert Smith's testimonial outburst in post-trial motions should change the outcome on this issue. The defendant's choice was his, regardless of what the court indicated. Finally, the court never affirmatively informed the defendant that he would absolutely have a right to argue Smith's testimonial outburst in post-trial motions, and therefore did not lead him astray.

## 2.    *Remaining claim for new trial*

El Herman does not solely rely on the witness's testimonial outburst to support his claim for new trial. He also claims the general lack of evidence against him justifies a new trial. This argument is not a stretch: the prosecution conceded during trial that this case was unusual because it had no physical evidence or exhibits to introduce. Tr. p. 103. Basically, it was a "pure historical conspiracy case with no physical evidence." Tr. p. 105.

During the trial the court even expressed concern about the lack of evidence presented by the prosecution. The court, however, was more concerned with how that general lack of evidence interacted with Smith's testimonial outburst on the witness stand. Together, the court believed the lack of evidence and testimonial outburst created a situation of "greater prejudice," and a situation that might even justify setting aside the verdict. Tr. p. 103. That situation, however, is no longer present as any argument based on the witness's testimonial outburst has been waived. Instead, the court is left with judging the credibility of the prosecution's six witnesses.

The prosecution's six witnesses testified they worked together with the defendant to buy cocaine powder, cook it into crack cocaine, and then sell it. Tony Smith identified the defendant and testified that he would "get powder cocaine for [El Herman]" and would "cook [it] for him" into crack cocaine. Tr. p. 34-35. Porsha May Claiborne identified El Herman and testified that she bought crack cocaine from him and also got powder cocaine for him to use. Tr. p. 68-69. Ronnie Arnell Turner identified El Herman and testified that he bought powder cocaine from the defendant, Tr. p. 91-92, and that his cousin delivered crack cocaine to the defendant, Tr. p. 96. Abdul Turner identified El Herman and testified that he sold the defendant crack cocaine. Tr. p. 135-36. Ylana Asante stated she was El Herman's girlfriend and saw him sell crack cocaine "every day,"

Tr. p. 148-50, and that he bought powder cocaine, but that he primarily sold just crack cocaine, Tr. p. 153-54. Twyla Finley stated she dated the defendant and that she sold crack cocaine for him. Tr. p. 178. She also testified that El Herman bought powder cocaine and personally cooked it into crack cocaine. Tr. p. 179.

El Herman argues the sole basis for the defendant's conviction was testimony provided by convicted felons, and that their testimony suffered from several inconsistencies. El Herman primarily alleges the time lines provided by the witnesses as to when he was allegedly involved in distributing and manufacturing cocaine do not match up. Specifically, El Herman alleges Asante testified El Herman was in Sioux City from October 2002 through January of 2003, and that three other witnesses testified he had moved to a different state in October of 2002. El Herman also emphasizes that Smith testified El Herman had moved out of Iowa sometime around late 2002, but also testified that the defendant was dealing with Smith during a six month period beginning in October of 2002. Furthermore, the defendant points out that Abdul Turner only testified he dealt with the defendant a couple of times and could not name any specific dates. Finally, El Herman alleges Clayborne made prejudicial statements that should have been objected to, and none of the witnesses testified as to a particular type of drug and quantity being distributed on a certain date, at a certain time, or at a certain location.

After reviewing the transcript, which was not available to El Herman at the time he filed his initial post-trial motions, and after examining the court's own beliefs regarding the credibility of the witnesses, the court does not believe a miscarriage of justice occurred. Asante did testify that El Herman was in Sioux City in late 2002, tr. p. 154, 162-63, and other witnesses testified that the defendant moved to Chicago around this time, tr. p. 42, 63, 188. All witnesses, however, testified that they knew El Herman in 2002 and saw him distributing and/or manufacturing cocaine sometime in 2002. Tr. p. 34-35

(Smith); 68 (Clayborne); 128-29 (R. Turner); 135 (A. Turner); 147-49 (Asante);178 (Finley). Moreover, several witnesses testified as to the quantities of drugs El Herman was dealing with. Tr. p. 84, 135, 173. While the witnesses' testimony was not precise regarding the times, quantities, and locations of drug activity, the court is convinced it did not preside over a miscarriage of justice that would warrant a new trial.

### 3. *Conditional grant of new trial*

The court indicated at trial, on numerous occasions, that it was concerned about Smith's testimonial outburst. *See* Tr. p. 63-64, 98, 103, 116-17, 230. The court remains concerned. Moreover, the court is particularly concerned about this outburst in conjunction with the prosecution's "pure historical conspiracy case with no physical evidence." Tr. p. 105. In fact, if El Herman were able to argue this point in his motion for new trial, the court would grant his motion.

At trial, the court informed El Herman that it would grant his motion for mistrial if the motion was formally made. Tr. p. 228. The defendant declined to move, and the court indicated El Herman could likely make such an argument again in post-trial motions. Tr. p. 232. Although the court has now found that he cannot make such an argument in his motion for new trial, if the court's holding on waiver is incorrect and overturned on appeal, then the court would grant his motion after considering all of his arguments in his motion for new trial. The testimonial outburst was sufficient to grant a mistrial prior to deliberations, and—so long as it may be properly considered post-verdict—it is equally sufficient to grant a new trial now. Thus, if the court can properly consider the testimonial outburst in El Herman's motion for new trial, the court grants his motion because the court is firmly convinced that, notwithstanding the admonition given the jury, Smith's testimonial outburst was so prejudicial that a miscarriage of justice occurred. This is especially true in light of the lack of strength of the prosecution's case. While the jury

21

apparently believed the prosecution's witnesses sufficiently to find the defendant guilty beyond a reasonable doubt, the court has serious reservations about the cooperators' testimony.

## IV. MOTION FOR JUDGMENT OF ACQUITTAL

### A. Legal Standards

Rule 29 of the Federal Rules of Criminal Procedure governs the standards applicable to motions for judgment of acquittal. Rule 29 states:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction.

FED. R. CRIM. P. 29(a). The rules specifically allow the court to reserve its ruling on a motion for judgment of acquittal, but "it must decide the motion on the basis of the evidence at the time the ruling was reserved." *Id.* 33(b). The defendant generally has "7 days after a guilty verdict" to move for a judgment of acquittal. *Id.* 33(c)(1).

The "insufficient to sustain a conviction" standard in Rule 29 is "very strict," *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005), as "a jury's verdict should not be overturned lightly," *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir. 2007). In fact, "[a] district court must consider a motion for judgment of acquittal with 'very limited latitude' and must neither assess the witnesses' credibility nor weigh the evidence." *United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007) (quoting *United States v. Thompson*, 285 F.3d 731, 733 (8th Cir. 2002)). The "district court must view the evidence in the light most favorable to the government, resolving evidentiary conflicts in

the government's favor and accepting all reasonable inferences drawn from the evidence supporting the jury's verdict." *Johnson*, 474 F.3d at 1048. "A motion for judgment of acquittal should be granted only 'if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" *United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 2006) (quoting *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999)). Thus, "if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt," the motion must be denied. *Thompson*, 285 F.3d at 733.

Even if the court grants a motion for judgment of acquittal, it "must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed," and "must specify the reasons for that determination." FED. R. CRIM. P. 33(d). On appeal, the district court's decision regarding a motion for judgment of acquittal is reviewed de novo under the same standards employed by the district court. *Cacioppo*, 460 F.3d at 1021.

## B. Legal Analysis

El Herman was found guilty of conspiring to manufacture and distribute controlled substances. "To convict a defendant of conspiring to distribute a controlled substance, the jury must have found beyond a reasonable doubt that a conspiracy to distribute a controlled substance existed, that the defendant knew of the conspiracy, and that the defendant knowingly participated in the conspiracy." *United States v. Thorpe*, 447 F.3d 565, 568 (8th Cir. 2006). The same standards apply in order to find a defendant guilty of conspiring to *manufacture* a controlled substance. *See United States v. Scott*, 64 F.3d 377, 380 (8th Cir. 1995).

As the court has already noted in its discussion of El Herman's motion for new trial, the prosecution's six witnesses testified they worked together with El Herman to buy cocaine powder, cook it into crack cocaine, and then sell it. In considering a motion for judgment of acquittal, the court does "not weigh the evidence or assess the credibility of the witnesses." *United States v. Brown*, 461 F.3d 1062, 1069 (8th Cir. 2006). In addition, the court must view the evidence in the light most favorable to the prosecution. *Id.* The testimony from the prosecution's witnesses, if believed, connects the defendant to a conspiracy to manufacture and distribute crack cocaine, and to distribute powder cocaine. As a result, the defendant's motion for judgment of acquittal is denied.

## *V. CONCLUSION*

El Herman's request for permission to contact jurors is to inquire into the jury's verdict based on *intrinsic* information, which the jurors are prohibited from testifying about under Rule 606(b). The court, therefore, denies El Herman permission to interview the jurors. El Herman's motion for new trial cannot be based on Smith's outburst on the witness stand because the defendant waived that argument by not moving for a mistrial on that basis. As a result, and because the court finds no miscarriage of justice otherwise occurred, El Herman's motion for new trial is denied. On the other hand, if the court were able to consider the testimonial outburst in El Herman's motion for new trial, the court grants, conditionally, his motion for new trial. Finally, El Herman's motion for judgment of acquittal is denied because the testimony provided by the prosecution's witnesses provided a basis for a reasonable jury to conclude El Herman was guilty of the crimes charged.

The court has provided every opportunity to the parties to argue and brief this issue to hopefully ensure a just decision. The court understands this result is frustrating for El

Herman, particularly when the court would have granted a mistrial had it been requested, and when the court indicated to him that he could likely argue the prejudice of the testimonial outburst in a post-trial motion. The risk of waiving that argument, being found guilty, and leaving his fate to hang on post-trial motions, however, was made known to El Herman and the choice was made. At trial, the court noted the ramifications of his choice: "You always have to be careful what you ask for, and sometimes it's a big mistake." Tr. p. 228. Now, the court can affirmatively add what was already implicit: you have to be careful what you don't ask for, too. Certainly, in hindsight, El Herman would have been better off moving for a mistrial. But that does not mean, nor should anything in this opinion be read to mean, that El Herman made the wrong decision at the time it had to be made. It was a classic trial strategy decision. After all, moving for a mistrial may have just delayed the result realized.

The defendant's **post-trial motions for permission to contact jurors, judgment of acquittal, and new trial are all denied**. Dkt. #s 64, 78. The defendant is now directed to take part in his presentence investigation report interview pursuant to this court's order on August 23, 2007. Dkt. # 69.

**IT IS SO ORDERED.**

**DATED** this 25th day of March, 2008.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA